May it please the Court, my name is Audre Bonnet. I am representing the petitioner, Mr. Camille Kairouz. Mr. Kairouz was in deportation proceedings under the former Section 242B of the Immigration Nationality Act. He was ordered deported in absentia when he failed to appear for a hearing on September 9, 1999. After Mr. Kairouz was detained by ICE in December 2009, he filed two motions to reopen based on the in absentia order. In both motions to reopen, Mr. Kairouz contended that he did not receive the hearing notice for the September 9 hearing. The notice was sent to Attorney Vadim Yusupolsky. Mr. Kairouz contends that Mr. Yusupolsky never notified him of the hearing. The first motion to reopen, which was prepared by different office, referenced both removal proceedings and deportation proceedings. It seems that it confused the two, and in the BIA's decision of that first motion, the BIA applied Section 240 of the INA to these deportation proceedings. I filed a petition for review on the denial of that first motion to reopen and then filed a second motion to reopen, making it clear that the proceedings were actually deportation proceedings under Section 242B of the INA. And in this second motion, Mr. Kairouz clarified that Mr. Yusupolsky was no longer his attorney because they had had a falling-out over fees. And on the August 17, 1999, hearing, Mr. Kairouz appeared for the hearing without Attorney Yusupolsky. Mr. Kairouz advised the immigration judge that he did not want Mr. Yusupolsky to represent him any longer. Well, let me stop you there and ask you, to begin with, what evidence is there that he told the immigration judge he was going to represent himself? And let me make a – both ask you for what affirmative evidence there is and note that in one of the affidavits he submitted, he made no mention of that as something that happened at that hearing. Yes. Thank you. As I was about to go into, there are no hearing transcripts in the record of any hearing. So there's nothing that I can actually point to the Court for that hearing or for any other hearing. Well, how about the fact that he didn't even mention it himself in his first affidavit? Yes, Your Honor. Referring to the affidavit on AR-101. That's correct. In the first affidavit, he didn't reference that this attorney was no longer representing him. He went on to discuss what efforts he had made to rectify the situation. That is why I filed a second motion, Your Honor. I didn't file the first motion. I saw that issue. I filed a second motion to make it clear that this – Well, how many do-overs does he get? I mean, if that's the problem, and that seems to be the linchpin of his current argument, that notice was sent – he doesn't dispute that notice was sent to his attorney. Right. And he doesn't dispute that if he was represented, that's where it was supposed to go. He's saying he told the agency that he specifically was no longer represented by that attorney. But there's no evidence at all supporting that in the immigration records. All we have is a statement of that effect in the second, but not the first affidavit that he submitted. So why should we believe it? And more importantly, why is the BIA compelled to believe it? Your Honor, the first motion – he did claim in the first motion – I'm sorry, in the first affidavit attached to the first motion – that he was not provided notice. But he didn't mention – But nobody disputes that. The question is whether he was supposed to be provided notice. If he was represented by counsel, he would have been provided notice through counsel. No. And I'm not disputing that. If Mr. Usopolsky was his attorney of record, and that's the whole issue here, was he the attorney of record? Well, I don't understand this, because there are regulations and there are forms and there are notifications that you're supposed to use if you – as to a change of address or a change of where notices to be mailed. Isn't that right? That's correct. And on the August hearing, he did submit. He appeared without Mr. – without Attorney Usopolsky, and he submitted a change of address to his address. How do we know that? That is in the record. Okay. Where do we have that? Where is that in the record? That is on page – Your Honor, there are two records of proceedings here. I'm referencing the September 27th, 2010 record, which is the most recent one filed. And on that one, it's page 119. He filed a change of address form. And that is dated? It is dated – the date of the hearing, August 17, 1999. Well, that was the date the Court marked received. Okay. What was the page number for that one? Page 119. And that's for the September 27th record of proceedings, because there were actually two in this case. And that's the only thing that I can point to the Court that shows that he was there. He provided a change of address form to his address, but the Court failed to maintain the hearing transcripts for not only this hearing, but for all the hearings. And for that reason, I can't point to anything else in the record to show the Court that he had told the Court on that day he did not want Mr. Yusopolsky to represent him anymore. And nonetheless, the Court then mailed the hearing notice to Mr. Yusopolsky. Mr. Carews had no relationship with the attorney, so he was never advised of that September hearing. But the attorney appeared at the September hearing. The attorney did appear, but they were no longer communicating. So Mr. Carews never received notice of the hearing. And that's the contention of the second motion. We're claiming that he did not receive proper notice, and under the regulations for deportations of in absentia hearings, he is not barred numerically or timewise to file motions to reopen. And that is why we filed a second motion to reopen. So his attorney appeared. That was Mr. Yusopolsky? Yusopolsky. He appeared. Is there anything on the record with regard to what he told the immigration judge as to the reason for his client's nonappearance? No, Your Honor, because there are no hearing transcripts for any of the hearings. Any minute order, any other notation of any kind? Not that I'm aware of. And I can't explain why there are no hearing transcripts. All right. But because of that, I can't tell you anything more than what the change of address form, and that's the fact that he was ordered to deport it. Now, the additional concern is that the argument being presented now doesn't appear to have been made to the BIA until, I take it, until you entered the case? That's correct, with the second motion. And that was the purpose of filing the second motion. It was the only way to get that argument out there. So we have the problem of whether we can disregard or jump over the first motion. And whether there has been satisfaction of the requirements under matter of Lozada for alleging ineffective assistance of counsel by attorney number two, whose name escapes me. You mean on the attorney that filed the motion to reopen? Right. The first motion. Your Honor, I actually was not going after a — I know the first motion, I believe, was actually arguing ineffective assistance of counsel. In the second motion, I was not going after the ineffective assistance of counsel argument because, one, I didn't believe Yusupolsky was the attorney of record. And the second motion — I'm sorry. The first motion, I believe, could be corrected by filing a second motion because there is no time and numerical limitations on motions to reopen for in absentia deportation orders when you're arguing lack of notice. So that the first motion could be corrected by a second motion. And yet the BIA specifically referenced the — what it described as the lack of an adequate explanation as to why the claim had not been fully articulated the first time, and goes on to argue that your client had not demonstrated due diligence sufficient to warrant equitable tolling. Now, your argument is that the clock never starts because ultimately it's a notice problem. That's correct. And the BIA — the second motion was based solely on lack of notice. And the BIA never actually addressed that. What they did was they addressed again the first motion, which argued exceptional circumstances, ineffective assistance of counsel. What I was trying to put the argument out there is this is a lack of notice situation. And that was never — the BIA never addressed that. So we keep going back to what happened in 1999. Correct. On the August 17, 1999 hearing. Why would Mr. Yusupolsky have appeared at the hearing if he had been discharged, if he was no longer representing your client? Because Mr. Kamen and Mr. Yusupolsky were not communicating at all. They had stopped communicating. That's how Mr. Kahrouz was unaware of the September hearing. And Mr. Kahrouz was eligible to adjust status. And he had U.S. citizen wife. They have four U.S. citizen children. So he had no reason to not appear at the hearing. Is there anything in the record about when Mr. Yusupolsky no longer was listed as counsel of record? No, Your Honor. It's assumed that he appeared at the September 9th hearing. And that's the hearing that Mr. Kahrouz did not appear in. I'm assuming after that hearing. But, again, there's no hearing transcript. So there's nothing I can actually point you to. I'm just assuming. So there's no point in time that you can point to that he was no longer listed as counsel of record? Not from the record, Your Honor. No. We have exhausted your time, but we'll still give you a minute for rebuttal. Okay. Thank you very much, Your Honor. And we'll hear from the Attorney General, the litigious Attorney General. But he's always the Respondent. He doesn't bring him himself, so. May it please the Court. Laura Merrildy for the Respondent, the Attorney General. I have a few points I want to make, but first I'd like to address a couple of things that came up during the Petitioner's presentation. Regarding what the immigration judge found, excuse me, at the September 9, 1999, hearing, the immigration judge noted in denying the motion to reopen in January 2010, that at the September 9, 1999, hearing, what Mr. Usipolsky said was that he did not know where the Petitioner was. And that appears in the immigration judge's decision, which is at pages 78 to 79 of the record, or the same decision, the same portion of the same decision appears also at 65 and 66. The immigration judge's decision indicates he clearly was listening to audio tapes, and he dropped a note, footnote, that no tape existed for the August 17, 1999, hearing. But you can tell from the level of detail where he's reporting about what happened at earlier hearings that he was, had listened to audio tapes of those. Was there a change of address form that was submitted in August 17? There was a change of address form. The date, it says, the date on it says August 10th. It apparently was submitted August 17th. The judge notes it's not conclusively established that Mr. Kairouz appeared at the hearing, but the address, change of address form was submitted on that date, his change of address. And what was the government supposed to do with that? Does that mean it was supposed to send notice to him rather than to his lawyer or not? No, Your Honor. Mr. Usipolsky was still counsel of record. He was not the court's rules. Immigration, excuse me, the applicable regulations indicate that an attorney or representative may withdraw only by motion made during proceedings. And that did not happen here. And in addition, there is no evidence that Mr. Usipolsky was discharged. Again, it's, there's no dispute or, excuse me, the Petitioner has stated that there was no communication between him and Mr. Usipolsky. Mr. Usipolsky had called in the day before on August 16th and said he was not going to be there, but the Petitioner would be. And that message appears in the record, the notation, the court's notation of that message appears at, I think, page 121 of the record. So he says that he told them that he wasn't being represented, but we don't know that, is that it? Yes, we don't know what he said, because in the first affidavit, he says nothing about any kind of dialogue with the immigration judge at a hearing. In the second affidavit prepared after his first motion to reopen failed, he has a narrative about telling the immigration judge that Mr. Usipolsky no longer represented him because of a fee dispute. And in his motion, we have an additional gloss on that, which is that he supposedly and, again, there's no evidence of this, told the immigration judge he did not want Mr. Usipolsky to represent him, which is a gloss by counsel rather than something that is reflected by the record. So we do assume that Usipolsky was counsel of record in September at that hearing or not? Yes. Yes. And he appeared at the hearing, and according to what the immigration judge found and noted in his decision, detailed decision denying the motion to reopen that was filed in December of 2009, Mr. Usipolsky said at the hearing that he did not know where Mr. Kairouz was. And just to make a point about transcripts, transcripts are not normally prepared unless there's an appeal. There was no appeal here. And, again, they're also not normally prepared just for a motion to reopen. And there was a lot of time that elapsed. I'm not talking about your time. I'm talking about the period of years. Understood, Your Honor. Yes. Right. The hearing at which the second time Mr. the Petitioner was ordered removed in absentia was in 1999, and the motion to reopen that proceeding was not filed until December 2009. And then, you know, then after that failed, there was another one. What relief would have been available to him? I mean, part of the argument is that he had no reason not to appear. Was there relief available to him at the time he didn't appear? Not that we know of from this record. He's never actually submitted. He has said at various times he was granted asylum. He said he was eligible for to adjust. But there is no evidence that he was eligible to adjust at any time across the 10-year span that's at the heart of this case. A record of his having a spouse or? He said he did. And in his first motion to reopen, he referred to that person as an ex-wife, saying he would have been eligible back in 1999 to reopen. Of course, he would have to be eligible at the time he applied. And he can't look back and say, I would have been eligible. But as it is, we don't really know whether he was eligible at any time for adjustment of status. And that's also a discretionary form of relief as well. Right. But had he appeared, he probably would have been, had he said that he had a wife, he probably would have been told, given some information about what to do. At an earlier hearing, the immigration judge found that at an earlier hearing, he obtained a continuance to assemble information about his wife's situation or her immigration status. And we don't know whether that ever happened. Are people being removed to Lebanon now? My understanding is, yes, Your Honor. But my understanding is limited. Given that Mr. Yusupolsky appeared at the September 9, 1999 hearing, that he had represented Mr. Kairos for 18 months at that point, that he had been the one, in fact, that got his initial in absentia order reopened, there is no issue here that Petitioner got notice of that hearing at which he was removed in absentia. This case is really about claims of ineffective assistance of counsel. The claim that Mr. Yusupolsky got notice but didn't tell Petitioner is really an ineffective assistance of counsel claim. And that was time barred under the regulations and the requirements for Lozada, the requirements to show equity. Kennedy. How would it be time barred under the? I'm thinking out loud a second. He wouldn't have the argument that he had never received notice because, in fact, he had, as a matter of law, because his counsel had, even though he didn't individually know it. But if his counsel didn't tell him and he doesn't show up because his counsel doesn't tell him, that's glaring ineffective assistance. Why is it that can't be brought up at some point in the future? Well, it could be brought up. It could be brought up within the 180 days specified for claims of that one didn't show up because of exceptional circumstances. Or the 180 days could be that that limit could be overcome if he had shown that he was entitled, entitled or that he made out a case for equitable tolling. I understand the 180-day limit. But equitable tolling, it would seem to me a case of ineffective assistance, which is my lawyer didn't tell me. Assume for a moment that could be established as a matter of unshakable fact. That would seem to be a pretty strong case for equitable tolling. So there wouldn't the time limit would be there, but it would be tolled. And so I go back to the original question. What is it that would prevent him? Now, and I'm not trying to disregard the fact that 10 years is a long time to wait and to ask for equitable tolling. But is there anything specific that would bar him from coming back at that point and saying, I never knew because my lawyer screwed up? What would bar him in this case is the lack of a showing of that he had exercised all due diligence to find out. But that's a little different. What I'm probing here is the notion that the regulations would preclude him from coming back. It's too late. And I don't think the problem is that it's too late, is that he can't make a showing that the board found sufficiently compelling. That's a different question. But is, maybe I've taken out of context, but I heard you, I thought I heard you say that it's too late for him to come back with that ineffective assistance argument. And I don't know why that would be so. I hope, I hope we're not talking past each other. But I think under these facts, it's too late. If it were to make the ineffective assistance. Because it's so long. Because the one, because there's the 180-day limit, and then he, because it's so long, that helps undermine any claim that he exercised due diligence. Okay. That I do understand. Anything else you need to tell us? If the Court's indulgence for just one second. We rarely allow people to stick to outlines. We kind of jump around. We would submit that the petition for review should be denied. Thank you. Thank you for the argument. Rebuttal. Thank you. I just wanted to touch on the transcripts again because of something that the government counsel said. The 8 CFR, Title VIII of the U.S. Code and the BIA require that all parties to the hearings be recorded and that those transcripts be included as the record and part of the record. That was not done here. That was not because of anything Mr. K. Ruse did inappropriately, something that the Court failed to do when it was required to do so. And because of that, Mr. K. Ruse cannot point to the Court and say, this is what I said in August 1999, or that I did tell the judge about a U.S. citizen wife. And it's, he's the one being prejudged here because the Court did not. Let me ask you, what would the basis for relief be? He, at the time, he's not married anymore, but at the time, he was married to a United States citizen. They have four U.S. citizen children who are now over 21, and they would now be his petitioners. But at that time, it would have been. So he could apply for adjustment of status. Adjustment of status. But he's not, he wouldn't have been eligible for cancellation. No, and he wouldn't have needed. He was eligible for, at that time through his wife, adjustment of status under 245A of the INA. And he still would be today, but it would be his children as the petitioners. Thank you. We thank both counsel for your helpful arguments. The case just argued is submitted. Thank you, guys.
judges: Tunheim, Schroeder, Clifton